## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBERT C. GUTIERREZ,

      Plaintiff,

v.                                                                    No. 14-cv-1168 SMV

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,

      Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a

Rehearing with Supportive Memorandum [Doc. 16] ("Motion"), filed on August 18, 2015.  The

Commissioner responded on November 12, 2015.  [Doc. 20].  Plaintiff replied on December 10,

2015.  [Doc. 21].  The parties have consented to the undersigned's entering final judgment in this

case.  [Doc. 7].  Having meticulously reviewed the entire record and being fully advised in the

premises, the Court finds that Plaintiff fails to meet his burden before this Court to show any

reversible error.  Accordingly, the Motion will be denied.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ.  *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision.  If the Appeals Council denies review, the

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. *See* Tr. 1, 5 (Appeals Council's Order), 344–361 (additional evidence).

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Id.*

3

**Procedural Background**

Plaintiff applied for a period of disability and disability insurance benefits on June 9, 2011.  Tr. 17.  He alleged a disability-onset date of December 20, 2009.  *Id*.  His claim was denied initially and on reconsideration.  *Id*.  Plaintiff requested a hearing before an ALJ.  *Id*.  On June 4, 2013, ALJ Ann Farris presided over a hearing in Albuquerque, New Mexico.  Tr. 17, 33−58.  Plaintiff appeared in person with his attorney.  Tr. 33–58.  The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE") Judith Beard.  Tr. 17, 33–58.

The ALJ issued her unfavorable decision on July 1, 2013.  Tr. 17–28.  She found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.  Tr. 19.  Then, at step one of the sequential evaluation process, she found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  *Id.*  Accordingly, she proceeded to step two, where she found that Plaintiff suffered from the following severe impairments: "gout, osteoarthritis, and obstructive sleep apnea[.]"  Tr. 19.  She acknowledged his somatoform disorder but found that it was not severe at step two.  Tr. 20.  At step three, she found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 22.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 22–27.  She found that

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except [with] the following limitations:  he can occasionally handle and finger with his right upper extremity but he is unable to work overhead with his right upper extremity. Environmentally, [Plaintiff] should avoid unprotected heights and dangerous machinery.

Tr. 22.

At step four, the ALJ found that Plaintiff was able to return to his past relevant work as an operations manager and as a supervisor. Tr. 27. Having found that Plaintiff could return to his past relevant work, the ALJ was not required to proceed to the fifth step. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and she denied the claim. Tr. 28. The Appeals Council denied Plaintiff's request for review on October 30, 2014. Tr. 1–5. Plaintiff timely filed the instant action on December 31, 2014. [Doc. 1].

## Analysis

Plaintiff argues that the ALJ erred in evaluating (and rejecting) the opinions of Dr. Hughson and Dr. Gucker. He further argues that the ALJ erred in her assessments at each of the three phases of step four. The Court is not persuaded. Plaintiff fails to show any reversible error. The Motion will be denied and the Commissioner's final decision, affirmed.

    I.   <u>Plaintiff fails to show reversible error in the evaluations of<br>the opinions of Dr. Hughson and Dr. Gucker.</u>

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5. For example, the ALJ should consider factors such as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

> which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(c).  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions."  SSR 96-5, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)).  Ultimately, the ALJ's explanation is "sufficient if it permits [the court] to 'follow the adjudicator's reasoning.'"  *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 SSR LEXIS 5, at *5–6, 2006 WL 2329939, at *6).

A. Plaintiff fails to show reversible error in the ALJ's evaluation of Dr. Hughson's opinion.

Here, the ALJ rejected the opinion of consultative examiner, Dr. Hughson, because the restrictions assessed by the doctor (i.e., marked limitations in the ability to interact with others, carry out instructions, and work without supervision) were "absolutely unsupported in the record."  Tr. 21.  For example, the ALJ found that Plaintiff had never presented with "clinical signs of marked restriction in the ability to concentrate, socialize, or follow instructions."  *Id.*  To the contrary, she found that the treatment notes revealed that Plaintiff "was always cooperative,

failed to exhibit objective signs of cognitive dysfunction[,] and was never noted to be responding to or distracted by internal stimuli." *Id.*   Further, she noted that Plaintiff's "previously detailed high level of function[2] [was] contrary to the significant limitations found by Dr. Hughson." *Id.*

Plaintiff argues that the ALJ erred in rejecting Dr. Hughson's opinion.  He argues that she failed to give specific, legitimate reasons for rejecting the opinion.  [Doc. 16] at 15.  Specifically, he challenges some of the ALJ's reasons as legally invalid and others as not supported by substantial evidence.  For example, Plaintiff argues that certain findings[3] are legally insufficient to support the ALJ's rejection of Dr. Hughson's opinion.  [Doc. 16] at 19–20 (citing *Tucker v. Sullivan*, 779 F. Supp. 1290, 1298–99 (D. Kan. 1991); *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1082 (D. Kan. 1990)).  He reasons that "[t]he absence of evidence is not evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993).  Thus, his position is that, as a matter of law, the ALJ could not properly rely on the absence of evidence that was consistent with Dr. Hughson's opinion.  The Court is not persuaded for two reasons.

First, the Court must be careful to view the *Thompson* quote ("[t]he absence of evidence is not evidence") in context.  The denial of benefits under review in *Thompson* was made at

---

[2] The ALJ appears to be referring her "previously detailed" findings at step two.  *See* Tr. 20–21.  There, the ALJ found that Plaintiff had "presented well to [his] treating sources and [was] quite functional in his daily activities." Tr. 21.  For example, the ALJ found that Plaintiff had no limitation in his activities of daily living because he attends to his own personal care needs (i.e., dressing, bathing, hair care, shaving, eating, and toileting), cleans, does dishes, cares for animals, prepares meals, drives a car, shops in stores (for food, clothing, and household supplies), watches television, reads, fishes, collects antiques, and needs no reminders to groom or take medications.  Tr. 20.  She further found that Plaintiff has only mild limitation in social functioning.  *Id.*  Specifically, she found that Plaintiff enjoys spending time with other people, regularly attends religious services, eats at restaurants once per week, goes to the movies once per month, joined a book club, gets along well with authority figures, has never been fired, and denies social withdrawal.  *Id.*  The ALJ also found a mild limitation in Plaintiff's ability to maintain concentration, persistence, or pace.  *Id.*  She reasoned that because Plaintiff drives a car, manages his own personal finances, reads, watches television, performs household chores, and uses a computer, follows spoken instructions well, his limitation was only mild.  *Id.*  She found that he had no episodes of decompensation.  *Id.*
[3] The specific findings were that: (1) Plaintiff had never presented with "clinical signs of marked restriction in the ability to concentrate, socialize, or follow instructions;" and (2) his treatment notes revealed that Plaintiff "was always cooperative, failed to exhibit objective signs of cognitive dysfunction[,] and was never noted to be responding to or distracted by internal stimuli."  Tr. 21

step five of the sequential analysis.  At step five, "[i]t is not [the claimant's] burden to prove she cannot work at any level lower than her past relevant work; it is the [Commissioner's] burden to prove that she can."  *Id.*  The ALJ in *Thompson* "relied on the absence of contraindication in the medical records," *id.* (emphasis omitted), in determining that the claimant retained an RFC that would allow her to perform other jobs in the national economy.  The Tenth Circuit held that the ALJ could not rely on this absence of evidence to meet his affirmative burden of proof at step five, noting that "[t]he ALJ's reliance on an omission effectively shift[ed] the burden back to the claimant."  *Id.*

The case before the Court today, however, was decided at step four, where "[t]he burden is on the claimant to show that her impairment renders her unable to perform [her past relevant] work," *Henrie v. U.S. Dep't of Health & Human Servs.,* 13 F.3d 359, 360 (10th Cir. 1993). Thus, the ALJ's reliance on the absence of supporting evidence in this case does not shift the burden of proof because Plaintiff had the burden of proof at step four anyway.[4]

More to point, however, an ALJ should evaluate medical opinions according to the *Watkins* factors.  *Watkins*, 350 F.3d at 1301; 20 C.F.R. § 404.1527(c).  The third and fourth factors are the degree to which the physician's opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole.  *Watkins*, 350 F.3d at 1301. Here, the ALJ's observation about the lack of evidence supporting Dr. Hughson's opinion is expressly approved by *Watkins*.  Thus, Plaintiff fails to meet his burden to show that these reasons are legally invalid.

---

[4] The Court has reviewed *Tucker*, 779 F. Supp. at 1298–99 and *Caldwell*, 736 F. Supp. at 1082, which Plaintiff cites in support of his position that the ALJ erred in considering the lack of evidence that was consistent with Dr. Hughson's assessed restrictions.  [Doc. 16] at 19–20.  Although Plaintiff cites to the cases, he makes no further argument as to how they are applicable here.  These cases are not binding on this Court.  Even if they were, however, they are not sufficiently analogous to show that the ALJ in this case committed reversible error.

Next, Plaintiff challenges the ALJ's finding that Dr. Hughson's opinion was "absolutely" unsupported by the record. He cites evidence that could support the doctor's opinion, including Dr. Hughson's own observations. [Doc. 16] at 17–20 (citing Tr. 69 (Dr. Gucker's opinion); Tr. 324 (rheumatologist's comment that Plaintiff's "pain seemed to be out of proportion to objective findings"); Tr. 38–40 (Plaintiff's confusion during his testimony at the administrative hearing); Tr. 188 (Plaintiff's daughter's third-party statement that Plaintiff is "very forgetful and always needs to be reminded to take his medications."); Tr. 48, 177, 181, 199 (Plaintiff's written statements and transcript of his testimony at the hearing); [Doc. 21] at 3–4. Therefore, he argues that the ALJ's finding is not supported by substantial evidence.

Plaintiff does not dispute that some evidence is inconsistent with Dr. Hughson's opinion. *See* [Doc. 16] at 17–19; [Doc. 21] at 2–4. Rather, he disputes that Dr. Hughson's opinion is "absolutely" unsupported. [Doc. 16] at 17–19; [Doc. 21] at 2–4. The Court agrees with Plaintiff that the evidence is not "absolutely" one way or the other. To the extent that the ALJ found that Dr. Hughson's opinion was "absolutely" unsupported, that finding is not supported by substantial evidence. But that is not the end of the analysis. In fact, the Court finds it to be of limited consequence.

The ALJ here was not required to discuss the evidence cited by Plaintiff. *See Keyes-Zachary*, 695 F.3d at 1161 (citing § 404.1527(e)(2)(ii)). She was only required to discuss the weight she assigned to Dr. Hughson's opinion and give good reasons for her evaluation. *See id.* This she did.

The ALJ cited numerous findings and evidence that she found to be inconsistent with Dr. Hughson's opinion. Tr. 20–21. Plaintiff does not challenge these findings. *See* [Docs. 16,

21].  Rather, Plaintiff argues that the ALJ's reasons for rejecting Dr. Hughson's opinion were inadequate.  [Doc. 21] at 3.  Plaintiff says that he does not ask the Court to re-weigh the evidence but, instead, highlights "the insufficiency of [the ALJ's] reasoning for rejecting the opinion."  *Id.*  The Court is not persuaded.  The ALJ applied the third and fourth *Watkins* factors in evaluating Dr. Hughson's opinion.  Certainly, the evidence was not "absolute[]," as the ALJ suggested.  Nevertheless, the evidence amounts to more than a "mere scintilla," which is all that is required.  *See Langley*, 373 F.3d at 1118.  Plaintiff fails to show reversible error.

B.  <u>Plaintiff fails to show reversible error in the ALJ's evaluation of Dr. Gucker's opinion.</u>

The ALJ assigned "little weight" to Dr. Gucker's opinion.  Tr. 21.  She found that Dr. Gucker had "significantly" relied on Dr. Hughson's report.  *Id.*  She further found that the limitations assessed by Dr. Gucker were "based largely" on Plaintiff's subjective allegations, which were "less than fully credible."  *Id.*

Plaintiff challenges these reasons as inadequate.  [Doc. 16] at 15–20.  He makes two specific arguments.  First, he argues that the ALJ erred in rejecting Dr. Gucker's opinion merely because it relied on Plaintiff's subjective complaints.  [Doc. 21] at 3; [Doc. 16] at 17 (citing *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005)).  Second, he argues that Dr. Hughson's opinion was consistent with Dr. Gucker's.  [Doc. 16] at 17, 20.  Plaintiff makes no other specific arguments regarding the ALJ's evaluation of Dr. Gucker's opinion.  The Court is not persuaded by Plaintiff's two arguments.

First, the ALJ did not reject Dr. Gucker's opinion because it relied on Plaintiff's subjective complaints.  Rather, she rejected the opinion, in part, because it relied on subjective

complaints *that she found to be less than fully credible*.  Tr. 21.  Plaintiff does not challenge the ALJ's credibility findings.  *See* [Docs. 16, 21].

Moreover, Dr. Gucker's opinion is distinguishable from the opinion in the *Thomas* case. In *Thomas*, the ALJ had rejected the opinion of an examining psychiatrist because the opinion was "based solely on the subjective findings during the evaluation [and] lack[ed] of objective findings."  147 F. App'x at 759.  The Tenth Circuit held that the ALJ erred in rejecting the psychiatrist's opinion merely because it was based in part on the claimant's *responses to psychological tests involving memory and concentration*.  *Id.*  When the ALJ rejected the psychiatrist's medical assessment of the claimant's responses to those psychological tests, the ALJ "impermissibly put [herself] in the position of judging a medical professional on the assessment of medical data."  *Id.* at 759–60.

Dr. Gucker's opinion arises from completely different circumstances.  Dr. Gucker did not examine Plaintiff.  Tr. 69–73.  He did not perform any psychological tests himself.  *See id.* Rather, he based his opinion on the portion of the record available to him.  *See id.*  In part, he relied on Plaintiff's own function report.[5]  Tr. 69.  However, the ALJ found that Plaintiff's "subjective allegations [we]re less than fully credible."  Tr. 21.  The Court does not find *Thomas* to be persuasive here.

Second, Plaintiff argues that because Dr. Gucker's opinion was consistent with Dr. Hughson's opinion, the ALJ should have given them both more weight, not less.  [Doc. 16] at 17, 20.  Of course, that would be an acceptable interpretation of the evidence.  However, the standard of review is different.  Plaintiff must show that the ALJ applied the wrong legal

---

[5] Dr. Gucker also considered a third-party function report completed by Plaintiff's daughter, as well as Dr. Hughson's report.  Tr. 69.

standard or that her findings were not supported by substantial evidence (or both). The fact that

the evidence is susceptible to more than one interpretation goes to neither. The Court finds that

the ALJ's reasons for rejecting Dr. Gucker's opinion are sufficiently clear to "permits [it] to

'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p,

2006 SSR LEXIS 5, at *5–6, 2006 WL 2329939, at *6). Plaintiff fails to meet his burden to

show that the ALJ committed reversible error in evaluating (and rejecting) of Dr. Gucker's

opinion.

## II.   Plaintiff fails to show reversible error at step four.

The parties dispute whether the ALJ's findings were adequate at step four. *See* [Doc. 16]

at 20–23; [Doc. 20] at 8–9; [Doc. 21] at 4–6. The Tenth Circuit Court of Appeals explained the

phases at step four as follows:

> Step four of the sequential analysis . . . is comprised of
> three phases. In the **first phase**, the ALJ must evaluate a
> claimant's physical and mental residual functional capacity (RFC),
> *see* SSR 86–8, Soc. Sec. Rep. Serv., Rulings 1983–1991, 423, 427
> (West 1992), and in the **second phase**, he must determine the
> physical and mental demands of the claimant's past relevant work.
> 20 C.F.R. § 404.1520(e). In the **final phase**, the ALJ determines
> whether the claimant has the ability to meet the job demands found
> in phase two despite the mental and/or physical limitations found
> in phase one. *See* SSR 82–62, Soc. Sec. Rep. Serv., Rulings 1975–
> 1982, 809; *Henrie v. United States Dep't of Health & Human
> Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). **At each of these
> phases, the ALJ must make specific findings.** *See Henrie*, 13
> F.3d at 361.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (emphases added).

The extent of the ALJ's phase-two task is case-dependent. *Wells*, 727 F.3d at 1075

(citing SSR 82-62, 1982 SSR LEXIS 27, at *8, 1982 WL 31386, at *3 ("Detailed information

about . . . mental demands [of past relevant work] . . . must be obtained *as appropriate*."

(emphasis in *Wells*)).  Where the record is adequately developed, the phase-two findings must still be sufficient for a phase-three finding and for meaningful judicial review.  *Winfrey*, 92 F.3d at 1025 ("Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, [courts] are left with nothing to review.").

A.  <u>Plaintiff fails to show reversible error at phase one or phase two.</u>

At phase one, Plaintiff argues that the ALJ's finding relies on an invalid RFC.  [Doc. 16] at 20.  However, as explained above, the Court is not persuaded that the RFC is invalid. Therefore, Plaintiff fails to show any error at phase one.

Next, at phase two, Plaintiff argues that the ALJ did not adequately evaluate the physical and mental demands of Plaintiff's past relevant work.  *Id.*  Plaintiff expressly disclaims any challenge to whether the ALJ had sufficient evidence to make the phase-two finding.  [Doc. 21] at 5.  Instead, Plaintiff seems to argue that the ALJ failed to consider that evidence, "instead relying on VE Beard's testimony."  *Id.* at 22.  Plaintiff argues that the ALJ must make "specific findings beyond the testimony of VE Beard."  *Id.* at 23.  The Commissioner responds that the ALJ, in fact, did evaluate the physical and mental demands of Plaintiff's past relevant work. [Doc. 20] at 8.  The Commissioner is correct.

The ALJ's step-four findings were, in relevant part:

> **6. The claimant is capable of performing past relevant work as an operations manager and as a supervisor.  This work does not require the performance of work-related activities precluded by [Plaintiff's RFC].**
>
> . . . .

> [Plaintiff] has past relevant work an operations manager (D.O.T. # 189.167-022, sedentary, SVP 7, skilled) and as a supervisor (D.O.T. # 188.137.010, light, skilled, SVP 7). During the hearing the [VE] testified as to the exertional classifications and specific vocational preparation ("SVP") assigned to the above-referenced jobs by the Dictionary of Occupational Titles ("DOT"). . . . In response to a hypothetical question that reflected [Plaintiff's RFC], the [VE] responded that the individual would be able to complete past work as the demands of said past work would not exceed the [RFC].
>
> Based on the testimony of the [VE], the undersigned concludes that, comparing [Plaintiff's RFC] with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed.

Tr. 27. The Court finds that the phase two finding is sufficient.

The ALJ referred to Plaintiff's past relevant jobs by specific DOT section number and levels of exertion, skill, and specific vocational preparation. *Id.* These descriptions of each job constitute findings as to the physical and mental demands of Plaintiff's past relevant work, and the findings are legally sufficient. *See, e.g., Wells*, 727 F.3d at 1075 (affirming phase-two findings that described demands of past work by levels of skill and exertion); *Cochran v. Colvin*, 619 F. App'x 729, 732 (10th Cir. 2015) (affirming phase-two findings that described demands of past work by DOT section number). Plaintiff fails to suggest—much less show—what more was required.

The Court is not persuaded by Plaintiff's argument that the ALJ did not consider Plaintiff's own reports about the demands of his past work. *See* [Doc. 16] at 22–23; [Doc. 21] at 5. First, the ALJ stated that she carefully considered all evidence in the record, Tr. 17, and the Court takes her at her word, *see Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[The] general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.").

14

Second, Plaintiff argues that the ALJ's own statements show that she ignored Plaintiff's evidence and considered the VE's testimony exclusively.  [Doc. 21] at 5 (citing Tr. 27) ("Based on the testimony of the [VE], the undersigned concludes that, comparing [Plaintiff's RFC] with the physical and mental demands of [Plaintiff's past relevant] work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed.").  The Court disagrees with Plaintiff.  This portion of the decision does not indicate that the ALJ ignored Plaintiff's reports in determining the demands of his past work.  It indicates that the ALJ relied on the VE's testimony at phase three, but it does not show that the ALJ ignored Plaintiff's evidence at phase two. Besides, the VE's testimony (on which the ALJ undisputedly relied) was itself expressly based on Plaintiff's evidence.  Tr. 52 ("Q [by ALJ]:  Now have you reviewed the exhibits and heard the testimony concerning [Plaintiff's] past work?  A [by VE]:  Yes, your honor.  Q:  On that basis, would you please categorize his past work in terms of exertional and skill levels, and give me the DOT numbers.  A: Yes. . . . ").  In any event, an "ALJ may rely on information supplied by the VE at step four about the demands of the claimant's past relevant work."  *Winfrey,* 92 F.3d at 1025.

Finally, and most importantly, the only medically established limitations at issue in the phase-two analysis are found in the RFC assessment (i.e., that Plaintiff was limited to light work, occasional handling and fingering with the right upper extremity, no overhead work with the right upper extremity, and no unprotected heights or dangerous machinery).  Tr. 27.  Thus, the ALJ needed only to obtain enough information regarding *those* limitations to determine whether Plaintiff could perform his past relevant work despite them.  *See Winfrey,* 92 F.3d at 1024 ("To make the necessary findings [at phase two], the ALJ must obtain adequate factual information

15

about those work demands which have a bearing on the medically established limitations.") (internal quotation marks omitted); *Wells*, 727 F.3d at 1075 (only requiring phase-two findings that relate to the limitations in the RFC ). This she did. The Court finds no reversible error at phase two.

B. Plaintiff shows no reversible error at phase three.

Plaintiff also challenges the ALJ's analysis at phase three. He complains that the ALJ's entire phase-three finding "consisted of a single perfunctory and unsupported statement[.]" [Doc. 21] at 6 (quoting Tr. 27 ("Based on the testimony of the [VE], the undersigned concludes that, comparing [Plaintiff's RFC] with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed")). He argues that such finding was conclusory and otherwise inadequate under *Winfrey*. [Doc. 21] at 6. Beyond conclusorily arguing that the phase-three finding is inadequate, Plaintiff fails to identify the error. *See* [Doc. 16] at 20–23; [Doc. 21] at 4–6.

At phase three, *Winfrey* requires an ALJ to "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023. The ALJ did just that. Plaintiff fails to show any reversible error at phase three, or at step four at all.

**Conclusion**

Plaintiff fails to meet his burden to show that the ALJ erred in evaluating (and rejecting) the opinions of Dr. Hughson and Dr. Gucker. Similarly, he fails to meet his burden as the movant here to show that the ALJ erred in her assessments at any of the three phases at step four. The Motion will be denied and the Commissioner's final decision, affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum [Doc. 16] is **DENIED**. The Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**